UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT O. IDAHOSA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-1005 |
| | ) | |
| NORD CLEANING SERVICE, INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Now before the Court is Defendant Nord Cleaning Service's ("Nord") Motion for Summary Judgment. For the reasons set forth below, the Motion [#30] is GRANTED.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA").

**PROCEDURAL BACKGROUND**

Plaintiff Robert Idahosa ("Idahosa") began working for Nord Cleaning Service on January 22, 2001. He supervised various sites in the Peoria area at which Nord had cleaning contracts. Idahosa voluntarily terminated his employment with Nord on September 7, 2004. On December 2, 2004, Idahosa filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that Nord had violated his rights under Title VII and the ADA. The EEOC issued Idahosa a Right to

Sue Letter October 13, 2005, and Idahosa, proceeding pro se, filed the instant action on January 12, 2006, naming Nord Cleaning Service, Curt Nord, and Linda Sears as defendants.

Defendants filed a Motion to Dismiss to which Idahosa filed a Response. By this Court's Order dated March 3, 2006, Defendants' Motion to Dismiss was granted in part and denied in part. All of Idahosa's claims against Curt Nord and Linda Sears were dismissed, as was the claim of discriminatory failure to promote based on race and the claim for compensatory and punitive damages arising out of retaliatory discharge under the ADA. Idahosa's surviving claims under Title VII are that he was discriminated against because of his race in that he was (1) denied payment for mileage, (2) denied insurance benefits, (3) denied wage increases, and (4) denied medical leave. Idahosa's surviving claims under the ADA are that he was (1) discharged because of a disability, and (2) denied reasonable accommodation in the form of medical leave.

Nord filed this Motion for Summary Judgment on February 28, 2007, arguing that it is entitled to judgment as a matter of law on all of Idahosa's claims. Also on February 28, 2007, the Clerk of the Court sent notice to Idahosa that a case-dispositive motion had been filed, that his response was due within twenty-one days, and that under the Court's local rules, a motion would be deemed uncontested if no opposing brief was filed.

Idahosa's twenty-one days expired on March 26, and Idahosa has not filed a response, nor has he requested additional time to do so, despite the Clerk's warnings of the detrimental consequences of failing to respond. Accordingly, the Court accepts as true Nord's statement of undisputed facts and deems the motion to be uncontested. *See* Local Rule 7.1(D)(2). The Court will now briefly address the relevant law and facts pertaining to each of Idahosa's claims.

**DISCUSSION**

**I. Summary Judgment Standard**

The Court recognizes that the standards of review governing summary judgment motions become somewhat irrelevant in a situation such as this one, where the non-moving party has not responded to the motion or otherwise objected to it. Still, summary judgment should only be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**II. Idahosa's Title VII Claims**

Title VII prohibits employers from discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986). Under Title VII, the plaintiff is required to establish that he has been the victim of intentional discrimination. *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993).

The plaintiff may present direct proof of discrimination or may rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), indirect, burden-shifting method of proof. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060–61 (7th Cir. 2003). Direct evidence "essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). In the alternative, under the *McDonnell Douglas* burden-shifting analysis, a plaintiff carries the initial burden of establishing a prima facie case of discrimination by showing:  1) he was a member of a protected class; 2) he was performing his job satisfactorily and was qualified for the

position that he in fact sought; 3) he was rejected for the position; and 4) the defendant filled the position with someone not of the plaintiff's protected class. *McDonnell Douglas*, 411 U.S. at 802; *Blise v. Antaramian,* 409 F.3d 861, 866 (7th Cir. 2005); *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its promotion choice. *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997). If the defendant does this, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. *Id*.

Here, Nord argues, essentially, that Idahosa can not offer any evidence of intentional discrimination. As stated above, Idahosa's claims under Title VII are that he was discriminated against because of his race in that he was (1) denied a wage increase, (2) denied payment for mileage, (3) denied insurance benefits, and (4) denied medical leave.

### A. Wage Increase

Idahosa stated in his deposition that John Farnam, whom Idahosa believed was doing the same job as him, received a raise. However, Farnam had a different position and had more job responsibilities than Idahosa. Farnam was Idahosa's supervisor. In fact, the other two employees who held positions similar to Idahosa are Caucasian and were paid at a lower hourly rate than Idahosa. Therefore, Idahosa is unable to establish intentional discrimination with respect to this claim.

### B. Mileage

Idahosa stated in his deposition that while he was reimbursed for some of his mileage, Farnam was reimbursed for more. Again, Nord argues that it is inappropriate to compare Idahosa and Farnam because they held different positions at different levels in Nord. Moreover, while Idahosa did receive mileage reimbursement for travel between worksites, his two

Caucasian counterparts did not receive any mileage reimbursement. Idahosa is unable to establish intentional discrimination with respect to this claim.

### C. Insurance Benefits

Idahosa claims that he was discriminated against with regard to AFLAC insurance, which is supplemental insurance, because Nord Cleaning Service would not pay one-half of the cost. Idahosa claims that Farnam and another Nord employee received reimbursement for one half the cost of AFLAC insurance. However, the record reveals that Nord did not pay one-half of the cost of supplemental insurance for *any* employee, and AFLAC was not a Nord Cleaning Service benefit. Each Nord employee who elected to be covered by an AFLAC policy was responsible for the full amount of the premium. Accordingly, Idahosa is unable to establish intentional discrimination with respect to this claim.

### D. Medical Leave

While Idahosa alleged that he was denied medical leave because of his race, he was actually granted unpaid leave for surgery on his shoulder in June 2004. After surgery he had restrictions, and Nord was willing to have him return to work within those restrictions. When Idahosa's shoulder pain increased in August 2004, he was allowed to take additional time off work. At his deposition, Plaintiff admitted that Nord allowed him to take off work for his military obligations and for medical care. As of the day Idahosa signed the resignation documents, he was physically unable to work. He testified that he left Nord on good terms and told them he would like to return when he was able. Once again, Idahosa is unable to establish intentional discrimination with respect to this claim.

In total, all of Idahosa's claims under Title VII must fail, and summary judgment in favor of Nord is appropriate.

**III. Idahosa's ADA Claims**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual" with regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). The ADA also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

The Seventh Circuit has defined the prima facie showing required of an ADA plaintiff for failure to accommodate as follows: (1) he was disabled; (2) the employer was aware of his disability; and (3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000).

Here, Idahosa admitted that he had job restrictions after his June 2004 surgery. Even after Nord voluntarily modified his work tasks, he was unable to perform and voluntarily left work at Nord. He admits to not be able to return to work as a supervisor, but has never requested any other job at Nord. "If the employee failed to request an accommodation, the employer cannot be held liable for failing to provide one." *Pellack v. Thorek Hosp. & Medical Center*, 9 F. Supp. 2d 984, 990 (N.D. Ill., 1998). Because Idahosa admitted that he resigned because he was unable to perform his job, and because he never requested an accommodation or alternative position, he is unable to establish his claim under the ADA, and Nord is entitled to judgment as a matter of law.

6

## CONCLUSION

For the above reasons, Nord's Motion for Summary Judgment [#30] is GRANTED. This matter is now TERMINATED.

ENTERED this 5th day of April, 2007.

                                                                                                        __s/Michael M. Mihm_____
                                                                                                          Michael M. Mihm
                                                                                                         United States District Judge