UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ROBERT O. IDAHOSA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-1005 |
| ) | |
| NORD CLEANING SERVICE, INC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Now before the Court is Defendant Nord Cleaning Service's Motion for Summary Judgment. For the reasons set forth below, the Motion [#30] is GRANTED IN PART and DENIED IN PART.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA").

**BACKGROUND**

Plaintiff Robert Idahosa ("Idahosa") began working for Nord Cleaning Service ("Nord") on January 22, 2001. He supervised various sites in the Peoria area at which Nord had cleaning contracts. His initial rate of pay was $9.00 per hour. By 2002, his rate was increased to $10.50 per hour, which, according to Nord, is the highest wage payable to the class of supervisors to which Idahosa belonged. When Idahosa first began working for Nord,

he was a full-time employee. However, at some point before May 2004, he decreased his hours to five hours per day, five days a week, and took a second job at Heartland Head Start.

Idahosa apparently requested a raise in 2003, but his request was denied. Another Nord employee, John Farnam, who is Caucasian, was promoted in 2002 to the full-time position of Area Supervisor, and received an annual salary exceeding Idahosa's salary. Idahosa was reimbursed for some, but not all, of the mileage related to his position. Farnam was apparently reimbursed for all of his mileage. Idahosa also alleges that Nord reimbursed Farnam and another employee for one-half the cost of AFLAC supplemental insurance, but he was not similarly reimbursed; however, Nord asserts that all Nord employees electing coverage under AFLAC were responsible for the full amount of the premiums. Finally, Idahosa alleges that he was denied unpaid medical leave, but Farnam and "other Caucasians" were given unpaid medical leave. Nord disputes that it denied anyone, including Idahosa, unpaid medical leave.

While working at Heartland Head Start in May 2004, Idahosa injured his shoulder. He had surgery on June 16, 2004, and as a result, took a period of unpaid leave from Nord. Idahosa testified that he was supposed to be off of work for six to eight weeks following his surgery, but his boss, Barry Nord, asked that he return to work on June 21, with the understanding that he would be doing only training, inspection, and small light-duty tasks. Idahosa also testified that, once he did return to work, there were more physical demands than those to which he had agreed.

According to Idahosa, his doctors placed him on a 10-pound weight restriction, and he was to refrain from doing pulling, lifting, pushing, or overhead work, and Nord knew about these restrictions. He states that, more than once after his post-surgery return to Nord, he

asked to be allowed to work within his doctor's restrictions, or be allowed to return to his medical leave. Idahosa states that on August 25, 2004, Linda Sears, office manager for Nord, told him that he should not be going to work if he knew that he could not do the job, and that he told her that he could manage the supervising skills but not heavy lifting, pulling, and pushing that he had to do when covering for the regular cleaning employees. He states that he asked Sears about his medical leave options, and she told him that he did not qualify. According to Idahosa, Sears told him he should turn in his two-week notice with an "open end date" and said that she would try to talk to the company owner and see if he would approve medical leave; if he did approve the leave, she would throw away the notice. Idahosa also alleges that Sears told her he must give two weeks' notice to be eligible for re-hiring and might otherwise get a bad job reference if he did not provide adequate notice. Idahosa states he was eventually told his request for leave had been denied, and therefore, he had to quit. Nord disputes that it ever denied any request for unpaid leave.

According to Nord, Idahosa voluntarily terminated his employment with Nord on September 7, 2004; it cites to portions of Idahosa's deposition where he states that he left Nord Cleaning Service because he could not do the job, but that he left on good terms and said he would like to return when able. Idahosa has not asked to return to work at Nord.

On December 2, 2004, Idahosa filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that Nord had violated his rights under Title VII and the ADA. The EEOC issued Idahosa a Right to Sue Letter October 13, 2005, and Idahosa, proceeding pro se, filed the instant action on January 12, 2006, naming Nord Cleaning Service, Curt Nord (company owner), and Linda Sears (office manager), as defendants.

3

Defendants filed a Motion to Dismiss, to which Idahosa filed a Response. By this Court's Order dated March 3, 2006, Defendants' Motion to Dismiss was granted in part and denied in part. All of Idahosa's claims against Curt Nord and Linda Sears were dismissed, as was the claim of discriminatory failure to promote based on race and the claim for compensatory and punitive damages arising out of retaliatory discharge under the ADA. Idahosa's surviving claims under Title VII are that he was discriminated against because of his race in that he was (1) denied payment for mileage, (2) denied insurance benefits, (3) denied wage increases, and (4) denied medical leave. Idahosa's surviving claims under the ADA are that he was (1) discharged because of a disability, and (2) denied a reasonable accommodation.

Nord filed this Motion for Summary Judgment on February 28, 2007, arguing that it is entitled to judgment as a matter of law on all of Idahosa's claims. On April 5, 2007, the Court granted the Motion for Summary Judgment after Idahosa had failed to timely respond. Idahosa filed a Motion for Reconsideration on April 16, stating that, in a "Motion to Compel Production of Documents and Answers," filed March 15, he had asked for more time to respond to the Summary Judgment Motion. The Court vacated its Summary Judgment Order on April 20. Idahosa filed a Response on June 12, and Nord has filed a Reply. The matter is fully briefed, and this Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the

Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. In other words, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

### I. Idahosa's Title VII Claims

Title VII prohibits employers from discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Meritor*

5

*Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986).  Under Title VII, the plaintiff is required to establish that she has been the victim of intentional discrimination. *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993).  The plaintiff may present direct proof of discrimination, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989), or may rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), burden-shifting method of proof.

Idahosa's pleadings provide no citation to legal authority or structure that clearly sets out which method of proof under which he is proceeding.  However, he has made no allegations which this Court can reasonably infer as setting out direct proof of discrimination, which usually involves "an outright admission that a challenged action was undertaken for one of the forbidden reasons covered in Title VII."  *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005).  Idahosa has pointed to no such admission, nor has he attempted to piece together a "convincing mosaic" of circumstantial evidence, as provided in *Troupe v. May Department Stores*, 20 F.3d 734 (7th Cir. 1994).  Instead, Idahosa's core allegation of discrimination—that a white employee, John Farnam, received more favorable treatment with respect to wages, mileage reimbursement, insurance benefits, and medical leave—is most likely an attempt at establishing a prima facie case of intentional discrimination using the burden-shifting method.

Under the *McDonnell Douglas* analysis, Idahosa must carry the initial burden of establishing a prima facie case of discrimination by showing:  (1) he was a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated

6

employees outside of his class more favorably.  *Salas v. Wisconsin Dept. of Corrections*, --- F.3d ---, 2007 WL 2048945, at *5 (7th Cir. July 18, 2007).

Idahosa claims that he has "proven the prima facie of this case through the established investigation of the authority vested in the EEOC by the congress of the United state to investigates unlawful employment discrimination [sic]."  Pl.'s Resp., at 19.  Idahosa cites no authority for this proposition, nor is the Court aware of any precedent stating that EEOC proceedings could alone establish a Title VII plaintiff's prima facie case.  This argument is without merit.[1]

With respect to some of Idahosa's allegations, such as AFLAC supplemental insurance, the parties dispute whether Idahosa received different treatement than *any* employee at Nord.  These factual disputes are immaterial, however, because Idahosa has failed to show that he was treated less favorably than similarly situated individuals who are not African American.  To be "similarly situated" to Idahosa, an individual must be comparable to him "in all material respects," *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006), meaning that there are no "differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).  Courts consider several factors when determining whether employees are similarly situated, including whether the employees held the same job description and were subject to the same standards.  *Bouehdi v. Plastag*

---

[1] Idahosa has made other meritless arguments in his Summary Judgment Response.  He argues that Nord's Motion for Summary Judgment should be denied because it does not comply with the pleadings rules in Local Rule 7.1(D).  The Court finds this argument ironic, as Idahosa's own pleadings grossly fail to comply with local pleading rules.  While Nord's Motion inexcusably fails to adhere to the precise requirements of 7.1(D), the Court declines to dismiss or strike it, as it does contain all essential elements and Idahosa's own pleadings fail to comply with local pleading rules.  Idahosa also argues that the transcript of his deposition attached to Nord's Motion for Summary Judgment "does not reflect the accuracy of Plaintiff [sic] statement," and "does not have the corrected sheets."  Resp., at 14.  However, Nord has submitted the errata sheet, and none of the changes to the deposition are material to this Court's resolution of the Motion for Summary Judgment.

7

*Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007).  Even though Idahosa is litigating this case pro se, he bears the burden of proving that he is similarly situated to the employee whose treatment he compares to his own.  *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Idahosa's argument that he and Farnam are similarly situated must fail.[2]  Nord has submitted differing job descriptions for Idahosa, who it claims was a "Peoria Supervisor," and Farnam, who it claims had more responsibilities as an "Area Supervisor."  Idahosa claims that Nord fabricated these job descriptions and disputes that Idahosa and Farnam did different tasks for Nord.  Again, the factual dispute is irrelevant.  Idahosa repeatedly admits that he was a part-time employee who worked approximately five hours per day, and does not dispute that Farnham was a full-time employee who worked approximately 10-12 hours per day.  "[F]ull time employees are simply not similarly situated to part-time employees.  There are too many differences between them[.]"  *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997); *Johnson v. University of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005)("Generally, part-time employees are not similarly situated to full-time employees."); *Fulmore v. Home Depot, U.S.A., Inc.*, 2006 WL 839459, at *17 (S.D. Ind. March 30, 2006); (same) *Brown v. Super K-Mart*, 1999 WL 417338, at *4 (N.D.Ill. June 16, 1999) (same).  Moreover, Idahosa has not rebutted Nord's showing that multiple Caucasian employees, who hold comparable positions in the company, were treated *less* favorably than Idahosa.

At certain points in his Response, Idahosa argues that Nord has abused the discovery process, and that he needs additional documents "to dispute the facts."  Resp., at 16-17.  However, the Court has already considered and ruled on these claims in its May 3, 2005,

---

[2] At times, Idahosa identifies other employees by name or simply "other Caucasians."  He fails to provide details regarding whether any of these people are "similarly situated" to him. As he bears the burden of establishing such details, these generic allegations are insufficient.

8

Order granting Nord's Motion to Strike Plaintiff's First Request to Admit Facts because discovery had long closed. The Court will not reconsider that ruling here. Moreover, contrary to Idahosa's assertion that the Court should "accept as true the well pleaded factual allegations of plaintiff's complaint" at this summary judgment stage, *see* Resp. at 18, summary judgment is instead the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin v. Dept. of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Because Idahosa has failed to demonstrate a genuine issue of material fact as to whether he was treated less favorably than any *similarly situated* employee outside of his protected class, as is required for the fourth element of his prima facie case, Nord is entitled to judgment as a matter of law on Idahosa's Title VII claims.

## II. Idahosa's ADA Claims

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual" with regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). The ADA also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

An ADA plaintiff must make the following prima facie showing for a failure-to-accommodate-claim: (1) he was disabled; (2) the employer was aware of his disability; and (3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000). In general, "'it is the

9

responsibility of the individual with the disability to inform the employer that an accommodation is needed.'" *Pellack v. Thorek Hosp. & Medical Center*, 9 F.Supp.2d 984, 989 (N.D. Ill. 1998) (quoting 29 C.F.R. § 1630.9 (1995)).

In its Motion for Summary Judgment, Nord argues that Idahosa cannot establish that he is a "qualified individual" under the ADA, that is, that even with an accommodation, Idahosa still could not perform the essential functions of his position. Nord points to the fact that Idahosa voluntarily terminated his employment with Nord, providing the reason that he was not physically able to do the work as Peoria Area Supervisor. Nord also states that it was willing to change Idahosa's job responsibilities so he could come back to work with restrictions after his June 2004 surgery and never denied any request for unpaid leave as an accommodation.

Idahosa provides a different version of events. While the primarily narrative form of his pleadings is difficult to navigate, Idahosa states that in June 2004, immediately following his shoulder surgery, he was on approved medical leave from work at Nord. He was asked by Nord to come back to work before the end of his scheduled leave because of some new accounts that were starting. According to Idahosa, Nord agreed that he would just train, check, inspect, and supervise, and that no strenuous physical work would be involved. He states that because of high employee turnover, he was required "to cover" for cleaning staff and do physical labor outside of the agreed restrictions. His doctor later placed him on a 10-pound weight restriction, with no pulling, lifting, pushing, or overhead work. He clearly states that he repeatedly requested that he be required to work only within his doctor's restrictions. He continues by arguing that he informed Nord that work within these restrictions would allow him to do the essential functions of his job, which he claims to be

10

"supervision, inspection, and training." Affidavit of Robert Idahosa, Pl.'s Ex., at 12. Idahosa claims that, nevertheless, he was "subjected to work outside of his medical restrictions and outside essential functions of his job," and was pressured to resign when he could not complete the tasks beyond supervision, inspection, and training. Resp., at 9. According to Idahosa, while Nord may have stated that it gave him an accommodation of restricted job duties due to his shoulder injury, in actuality, Nord forced him to work outside those restrictions, and further denied his request for unpaid medical leave, ultimately leading to his constructive discharge.

In its Reply brief, Nord argues that "Plaintiff has not filed anything disputing the fact that he could not perform his job, with accommodations, when he left Nord's employment," and that his allegations lack evidentiary foundation. This assertion is simply untrue. Idahosa supports all of his relevant allegations with his affidavit, signed under penalty of perjury. Nord has not moved to strike or otherwise attack Idahosa's affidavit. The issue of whether Nord denied Idahosa an accommodation that could have allowed him to perform the essential functions of his position—alleged by Idahosa to be "supervision, inspection, and training"—is a material factual dispute inappropriate for resolution by this Court. Nord may believe that Idahosa has mischaracterized the "essential functions" of his position as Peoria Area Supervisor, but it has not moved for summary judgment on this or any other grounds. The Court expresses no opinion on whether Idahosa may be able to ultimately prove all the elements of the ADA failure-to-accommodate claim at trial, but because Nord has failed to establish the absence of a genuine issue of material fact, its Motion for Summary Judgment with respect to Idahosa's ADA claims must be denied.

11

## CONCLUSION

For the reasons set forth above, Nord's Motion for Summary Judgment [#30] is GRANTED IN PART and DENIED IN PART. The Court will contact parties to schedule final pre-trial conference and trial dates.

ENTERED this 29th day of August, 2007.

                                                         s/Michael M. Mihm
                                                         Michael M. Mihm
                                                         United States District Judge