E-FILED
Wednesday, 03 December, 2008  03:34:37 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT O. IDAHOSA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 06-1005 |
| NORD CLEANING SERVICES, INC. | ) ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiff Robert O. Idahosa and Defendant Nord Cleaning Services Incorporated filed Motions for Summary Judgment. For the reasons set forth below, Idahosa's Motion for Summary Judgment [#68] is DENIED and Nord Cleaning's Motion for Summary Judgment [#66] is GRANTED IN PART AND DENIED IN PART.

## JURISDICTION

The Court has jurisdiction over this matter pursuant Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Family Medical Leave Act, 28 U.S.C. § 2612 *et seq.* ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA").

## BACKGROUND

On January 6, 2006, Plaintiff Robert O. Idahosa filed a Complaint against Curt Nord, the president and owner of Nord Cleaning Services, Inc. ("Nord Cleaning"), Linda Sears, the business manager for Nord Cleaning, and Nord Cleaning, alleging discrimination under Title VII, the American with Disabilities Act (ADA), and the Illinois Human Rights Act. While the Court's Order of July 7, 2008 succinctly sets out the

chronology of this case, a brief overview summarizing the current parties and the remaining claims may prove helpful.

Prior to this current Order, the Court dismissed Curt Nord and Linda Sears as parties because they are not "employers" as defined by Title VII and the ADA. (See March 3, 2006, Order). The Court denied Nord Cleaning's Motion for Summary Judgment with regard to Idahosa's ADA claim, stating that while it expressed no opinion on whether Idahosa may be able to ultimately prove all the elements of the ADA failure-to-accommodate claim at trial, it found that Nord Cleaning failed to establish the absence of a genuine issue of material fact. (See August 27, 2007, Order). With regard to Idahosa's Title VII claim, the Court granted summary judgment in favor of Nord Cleaning and held that Idahosa failed to establish a prima facie case under Title VII using the *McDonnell Douglas* indirect method of proof. (See August 29, 2007 Order). Upon Idahosa's Motion to Reconsider, the Court vacated its dismissal of the Title VII claim, finding that Curt Nord's alleged use of the term "nigger," in reference to Idahosa, gave rise to an inference of discriminatory actions and that the Title VII claim should have been analyzed under the direct and indirect methods of proof. (See Minute Entry for March 12, 2008 hearing). At that hearing, the Court granted Idahosa leave to file an Amended Complaint to allege a claim pursuant to the Families and Medical Leave Act of 1993 (FMLA), portions of which were later stricken.

Idahosa's and Nord Cleaning's current motions for summary judgment are now fully briefed, and this Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material fact by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

**Idahosa's Motion for Summary Judgment**

Idahosa seeks Summary Judgment on his Title VII claim, his FMLA claim, and his ADA claim.

A.  Title VII

Title VII prohibits employers from discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986).  Under Title VII, the plaintiff is required to establish that he has been the victim of intentional discrimination.  *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993).

Idahosa argues he is entitled to summary judgment on his Title VII claim, arguing that the racial comments allegedly made by Curt Nord and Linda Sears demonstrate that he was treated less favorably than similarly situated employees not in the protected class.  As evidence of that, he alleges that Curt Nord called him a "nigger." (Idahosa Mot., 6).  Idahosa states that the testimony of Curt Nord and Linda Sears refuting his allegations of racial slurs are not credible. (Idahosa Mot., 6-7). [1]

In its Opposition Brief, Nord Cleaning argues that Idahosa fails to identify any portion of Nord Cleaning's Answers to Interrogatories, Affidavits, or deposition testimony that demonstrates that Nord Cleaning admitted to participating in discrimination.  Nord

---

[1] At the March 12, 2008, hearing, the Court vacated its granting of summary judgment in favor of Nord Cleaning on the Title VII claim to allow Idahosa to present evidence under the direct method of proof. The Court will not consider evidence of discrimination under the indirect method, as it has already held that Idahosa failed to meet his burden of proof. (*See* August 29, 2007, Order).  Idahosa's renewed allegation that John Farnam was a similarly situated employee who was treated more favorably because he was promoted and received a higher salary than Idahosa was addressed the Court's previous Order and rejected.

Cleaning denies that any derogatory comments were made in the workplace and Curt Nord specifically denied calling Idahosa a racial slur at his deposition. (Nord Dep. 21).

Viewing the facts and all reasonable inferences in favor of Nord Cleaning, the Court does not find that Idahosa has proven, as a matter of law, that he was the victim of intentional discrimination. Whether or not Curt Nord made derogatory comments to Idahosa is a credibility issue, not to be decided on summary judgment.[2]  *See Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50 (1986) (explaining that a court may not, at the summary judgment stage, evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter).

B.  ADA Claim

Citing the July 7, 2008, Order, Idahosa argues he is entitled to summary judgment because the Court found he had established a prima facie case of discrimination and that Nord Cleaning failed to establish the absence of a genuine issue of material fact. The Court finds that Idahosa is mistaken as to the intent of its Order. In an Order dated August 29, 2007, the Court denied Nord Cleaning's Motion for Summary Judgment on Idahosa's ADA claim and held:

> [T]he issue of whether Nord denied Idahosa an accommodation that could have allowed him to perform the essential functions of his position—alleged by Idahosa to be "supervision, inspection, and training"—is a material factual dispute inappropriate for resolution by this Court. Nord may believe that Idahosa has mischaracterized the "essential functions" of his position as Peoria Area Supervisor, but it has not moved for summary judgment on this or any other grounds. The Court expresses no opinion on whether Idahosa may be able to ultimately prove all the elements of the ADA failure-to-accommodate claim at trial, but because Nord has failed to establish the absence of a genuine issue

---

[2] Further, as the Court will discuss below, these alleged comments were not timely filed with the EEOC.

of material fact, its Motion for Summary Judgment with
respect to Idahosa's ADA claims must be denied.

The Court stated that whether Idahosa could prevail on his ADA claim would be left for trial. Idahosa has not brought forth evidence to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

C.  FMLA Claim

Idahosa alleges a violation of FMLA, stating that Nord Cleaning denied his request for FMLA prior to Idahosa terminating his employment, which resulted in a wrongful discharge. FMLA entitles employees who have returned from a family or medical leave to be reinstated to the position they held before leave, or to an equivalent one. 29 U.S.C. § 2614(a)(1). *Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 748 (7th Cir. 2004). There are limitations on an employer's obligation to reinstate an employee. *Id.* citing 29 C.F.R. § 825.216(a)(1)(2). An employee is entitled only to benefits that he would have retained if he had not taken a leave. *Id.* citing 29 C.F.R. § 825.312(d). At all times, the employee bears the burden of demonstrating his right to be restored to the same or equivalent position. *Id.* To support his FMLA claim, Idahosa argues that he was denied paid medical leave and alleges that the depositions of Curt Nord, Barry Nord, a project manager, and Linda Sears regarding Nord Cleaning's FMLA policy are inconsistent.

In its Opposition brief, Nord Cleaning states that the deposition testimony of Curt Nord, Barry Nord, and Linda Sears indicates that Idahosa was allowed medical leave in June of 2004. Nord Cleaning states that Idahosa was not fired from his position but rather resigned. Barry Nord testified that Idahosa resigned because he needed to give his shoulder more time to heal. (Nord Dep. 15). Linda Sears testified that she denied

his request for paid medical leave, but told him that he could take unpaid medical leave. (Sears Dep. 16).

The disputes of material fact make summary judgment inappropriate. Therefore, the Court DENIES Idahosa's Motion.

**Nord Cleaning's Motion for Summary Judgment**

Nord Cleaning moves for summary judgment on Idahosa's Title VII claim and FMLA claim.

A.  <u>Title VII Claim</u>

On December 2, 2004, Idahosa filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that Nord had violated his rights under Title VII and the ADA. Nord Cleaning argues that Idahosa's Title VII claim should be dismissed because (1) the alleged slurs were not included in Idahosa's EEOC charge; (2) Idahosa failed to timely bring a claim regarding the slurs; and (3) there is no causation between the protected activity and the adverse employment action.

The Court notes that it vacated its entry of summary judgment in favor of Nord Cleaning on Idahosa's Title VII claim to allow Idahosa to present evidence of discrimination under the direct method of proof and allowed Nord Cleaning additional time for discovery regarding the allegations of racial slurs. Under the direct method of proof, Idahosa must present evidence, direct or circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action;

- 7 -

and (3) a causal connection exists between the two. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).

On August 22, 2008, Nord Cleaning re-deposed Idahosa. Idahosa testified that in 2002, he heard Curt Nord tell Daren Johnson, the operation manager, to "hire no niggers in my company." (Idahosa Dep. 33-35). Idahosa stated that "right after this incident happened," he asked for a promotion and a raise, which were denied. (Idahosa Dep. 37-38). This comment, coupled with the promotion and raise denial, started the clock on this discrimination claim. However, Idahosa did not file any claim with any agency regarding this slur. (Idahosa Dep. 40).

Idahosa further stated that Linda Sears and a woman with the last name Robinson, who was an assistant, referred to him as "Mandingo." (Idahosa Dep. 40). He did not give a date as to when this occurred, except to say that they called him that name "since I worked there until I left." (Idahosa Dep. 41). He also stated that these individuals called him "black meat." (Idahosa Dep. 42). He testified that as a result of these alleged comments, he was denied raises, promotions, and mileage reimbursements, accommodation, and medical leave. (Idahosa Dep. 48). Idahosa stated that he "cannot tell… don't know" if Linda Sears had the ability to give him a raise. (Idahosa Dep. 48). Each time Linda Sears and Ms. Robinson made the comments, the clock started running on a discrimination claim. Idahosa never filed any claim with any agency regarding these slurs[3].

---

[3] Idahosa testified in his second deposition that he told the EEOC about these slurs in an amendment to his EEOC charge filed in 2004. (Idahosa Dep. 40, 45-46). The "amendment" Idahosa seems to be referring to is a transcript of an investigation interview between the EEOC investigator and Linda Sears, where the investigator asked: "Did you ever use racial slurs directed to CP?" Linda Sears responded: "No." (Idahosa Dep. 47). The Court does not construe this single EEOC interview question sufficient to put Nord Cleaning on notice of these comments.

Finally, Idahosa stated that in 2004, a Nord Cleaning employee called Mexican employees "wetbacks." (Idahosa Dep. 54). Idahosa stated "I am not Mexican, but I am minority in this country." (Idahosa Dep. 56). He stated that as a result of this comment, he was denied a raise, promotion, medical leave, and mileage reimbursement. (Idahosa Dep. 56). Idahosa did not mention this comment in his EEOC charge. (Idahosa Dep. 63).

1.   Scope

Nord Cleaning argues that a Title VII plaintiff cannot bring a claim in a lawsuit that was not included in his EEOC charge. Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497 (1994).

Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in his complaint. *Id.* The claims are not alike or reasonably related unless there is a factual relationship between them. *Haugerud v. Amery School Dist.*, 259 F.3d 678, 689 (7th Cir. 2001). This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals. *Id.* This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved." *Id.*

In his EEOC charge, Idahosa alleges:

> I was employed as Area Supervisor for the above Respondent [Nord Cleaning Services] from January 22, 2001 until September 7, 2004. During my employment Respondent denied me raises, insurance benefits and mileage on the same basis that it afforded two white Area Supervisors. . .

The Court finds that the "nigger," "Mandingo," and "black meat" comments are reasonably related to the allegation of discrimination in Idahosa's EEOC complaint because these comments present evidence of direct discrimination or racial animus against Idahosa. However, the "wetback" comment is beyond the scope of Idahosa's EEOC complaint because this comment is not factually related to his EEOC charge because he is not Mexican.

2.  Timeliness of slurs

Idahosa filed a claim with the EEOC on December 3, 2004. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5 (e)(1). Each discrete act of discrimination, such as a failure to promote constitutes a separate, actionable unlawful employment practice, which requires the employee to file a timely EEOC charge. *Brown v. Illinois Dept. of Natural Resources*, 499 F.3d 675, 680 (7th Cir. 2007). Accordingly, Idahosa is time-barred from filing suit under Title VII for any "discrete act" that occurred beyond the 300-day EEOC charging deadline.

The only limited exception to the 300-day rule is if there is a continuing violation. The continuing violation doctrine allows an individual to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based. *Lewis v. City of Chicago,* 528 F.3d 488, 493 (7th Cir. 2008). Thus, despite its

name, it is a doctrine about cumulative rather than continuing violation. *Id.* A typical case involving a continuing violation is workplace harassment on grounds of sex—while the first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, if they continue they may eventually amount to an actionable pattern of harassing behavior, and then the entire series is actionable. *Id.*

Idahosa alleges that Curt Nord made the "nigger" comment in 2002. As this comment was not made within the 300-day EEOC charging deadline, this racial slur is time-barred.

Idahosa also alleges that Linda Sears and Ms. Robinson called him "Mandingo" and "black meat" throughout his employment. Idahosa began his employment on January 22, 2001, resigned September 7, 2004, and filed his EEOC charge December 3, 2004. The Court finds that each racial comment was a discrete act of discrimination which required a filing of an administrative charge with the EEOC within 300 days of the comment. The Court does not find that the continuing violation doctrine is applicable because each comment amounted to actionable conduct and Idahosa does not allege there was an escalation of comments or that the discrimination intensified during his employment. Therefore, Idahosa can only present evidence of the "Mandingo" and "black meat" comments that were made by Linda Sears and Ms. Robinson within the 300 days of his EEOC complaint. Therefore, all comments allegedly made prior to February 7, 2004 are time-barred and Idahosa may not present evidence of these comments.

    3.   Causation

The Court must now determine whether there is a causal connection between the "Mandingo" and "black meat" comments made after February 7, 2004 and his alleged adverse employment actions. Idahosa alleges that as a result of discrimination, he was denied raises, promotions, mileage reimbursements, accommodation, and medical leave. While the Court may believe that Idahosa's statements about the effects of these alleged comments are vague and conclusory, it cannot find, as a matter of law, that there is no causal connection between the "Mandingo" and "black meat" comments and his adverse employment actions.

For reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Nord Cleaning's Motion for Summary Judgment on Idahosa's Title VII claim. Idahosa is barred from presenting evidence of the "nigger" or "wetback" comments. Idahosa may present evidence of the "Mandingo" and "black meat" comments, but only the comments made after February 7, 2004.

B.   FMLA Claim

According to Idahosa, his doctors placed him on a 10-pound weight restriction, and he was to refrain from doing pulling, lifting, pushing, or overhead work, and that Nord Cleaning knew about these restrictions. He states that, more than once after his post-surgery return to Nord Cleaning, he asked to be allowed to work within his doctor's restrictions, or be allowed to return to his medical leave. Idahosa states that on August 25, 2004, Linda Sears told him that he should not be going to work if he knew that he could not do the job, and that he told her that he could manage the supervising skills but not heavy lifting, pulling, and pushing that he had to do when covering for the regular cleaning employees. He states that he asked Linda Sears about his medical leave

options, and she told him that he did not qualify. According to Idahosa, Linda Sears told him he should turn in his two-week notice with an "open end date" and said that she would try to talk to the company owner and see if he would approve medical leave; if he did approve the leave, she would throw away the notice. Idahosa also alleges that Sears told her he must give two weeks' notice to be eligible for re-hiring and might otherwise get a bad job reference if he did not provide adequate notice. Idahosa states he was eventually told his request for leave had been denied, and therefore, he had to quit.

The Court construes Idahosa's FMLA claim to be a claim for wrongful termination, in that he was forced to resign because he requested medical leave. *See Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 -885 (7th Cir. 2005) (A claim under FMLA for wrongful termination can be brought if an employer denies the employee his entitlements under FMLA.)

Nord disputes that it denied Idahosa's request for unpaid leave but argues that, even if it had denied him medical leave, Idahosa cannot show he suffered any recoverable damages. *Franzen v. Ellis Corp,* 543 F.3d 420, 426 (7th Cir. 2008) (holding that that an employee may not collect damages for periods of time in which he otherwise would have been unable to work for the company and that an employee has no right to reinstatement-and, therefore, damages-if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job); *Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago,* No. 03 C 0885, 2004 WL 2453835, at *9 (N.D. Ill. Nov. 1, 2004) (finding that plaintiff did not lose any vacation time or paid leave as a result of being denied FMLA leave). Nord was

"either unwilling or unable to return to work after the accident that necessitated his medical leave" and therefore, suffered no damages. (Nord Cleaning Mot. 7).

Idahosa may be able to prove he suffered damages on his FMLA claim if he can prevail on his ADA claim. While the Court continues to express no opinion as to whether Idahosa may be able to ultimately prove all the elements of his ADA failure-to-accommodate claim at trial, if Idahosa can prevail, he could then assert damages in his FMLA claim, in that, had Nord Cleaning accommodated his disability, Idahosa would have returned to work. Therefore, the Court cannot conclude, as a matter of law, that Idahosa will be unable to recover damages under FMLA.

For reasons stated above, the Court DENIES Nord Cleaning's Motion for Summary Judgment on Idahosa's FMLA claim.

## CONCLUSION

For the reasons set forth herein, Idahosa's Motion for Summary Judgment [#68] is DENIED and Nord Cleaning's Motion for Summary Judgment [#66] is GRANTED IN PART and DENIED IN PART. The Final Pre-Trial Conference is set for December 12, 2008, with a Jury Trial set for February 2, 2009.

ENTERED this 3rd day of December, 2008.

    __s/  Michael M. Mihm_____
    Michael M. Mihm
    United States District Judge